■ JOAN LIZARDO, an Infant, by His Mother and Natural Guardian, MARIA BRITO, et al., Respondents, v BOARD OF EDUCATION OF THE CITY OF NEW YORK et al., Appellants. [908 NYS2d 395]—

Order, Supreme Court, Bronx County (Larry S. Schachner, J.), entered May 15, 2009, which denied defendants' motion for summary judgment dismissing the complaint, unanimously reversed, on the law, without costs, and the motion granted. The Clerk is directed to enter judgment dismissing the complaint.

The infant plaintiff, a fourth grader, was injured during a kickball game in physical education class, when another student collided with him. He described the incident at his deposition as follows: "I was playing short stop. I was in the field. I was between second and third, and there was a kid trapped in the middle. I had the ball and he was running in the baseline. And then he didn't want to get out, so he went—he fell on top of me. He was just charging into me, and then I fell down. He landed in the wrong place and then I twisted my ankle, and then I went in. He went to second and I was, like near second." Although his affidavit, submitted in opposition to defendants' motion, is not identical to this summary, and both differ from the teacher's observations, none of these differences creates a material issue of fact that precludes the conclusion we reach here as a matter of law.

Even accepting as true plaintiffs' factual assertions regarding

the event, their claim that the teacher was negligent in failing to properly supervise the children and failing to instruct them on the rules of the game must be rejected as a matter of law.

While "[s]chools are under a duty to adequately supervise the students in their charge and they will be held liable for foreseeable injuries proximately related to the absence of adequate supervision," they are not "insurers of safety" and cannot be held liable "for every thoughtless or careless act by which one pupil may injure another" (*Mirand v City of New York,* 84 NY2d 44, 49 [1994]). The spontaneous act of one student running directly into another student in an effort to avoid being tagged or called out exemplifies such a thoughtless or careless act.

Courts are frequently presented with negligence claims against school districts where students have suddenly, whether accidentally or purposefully, knocked down other students during a variety of school activities, such as organized athletic games, recreational activities, and safety drills. For instance, in *Opalek v West Islip Union Free School Dist.* (1 AD3d 491, 491, 492 [2003]), the defendants were awarded summary judgment because "the infant plaintiff's injury resulted from a spontaneous and unforeseeable collision with a fellow student during a physical education class" and "the incident could not have been anticipated in the reasonable exercise of [the defendants'] legal duty to the infant." Similarly, in *Francisquini v New York City Bd. of Educ.* (305 AD2d 455 [2003]), a seven-year-old girl was injured when a boy was pushed into her by another boy, causing her to fall off a jungle gym. The Second Department set aside the verdict in favor of the plaintiff, because there was no showing "that the defendant's supervision was inadequate or that the defendant's conduct was the proximate cause of the happening of the accident" (*id.* at 456).

The principle that the school cannot be liable for the "spontaneous and unforeseeable act committed by a fellow . . . student" has also been relied on where high school students participating in school athletic activities have been injured in collisions with other students (*see e.g. Siegell v Herricks Union Free School Dist.,* 7 AD3d 607, 609 [2004] [citation and internal quotation marks omitted] [high school student participating in a "frisbee relay race" in physical education class ran into or pushed another student from behind while both were trying to catch the same frisbee]; *Sangineto v Mamaroneck Union Free School Dist.,* 282 AD2d 596 [2001]).

The present matter is not different from the foregoing cases. Even accepting as true every factual assertion made by the infant plaintiff, there is no evidence in the record that the colli-

sion was anything other than a sudden, impulsive act that could not reasonably have been foreseen or prevented.

The affidavit plaintiff submitted, by a "Sports Liability Consultant" and "Board Certified Forensic Examiner with a 'Fellow Designation' of the American College of Forensic Examiners," fails to support the claim of negligence. Even assuming for the sake of argument that the opinion of a "Sports Liability Consultant" could appropriately be treated as that of an objective expert, his assertions would not justify a finding of liability. The assertions that the incident might have been prevented by closer supervision and that it might have been prevented by instructions specifically informing the children that it is against the rules to run directly into an opposing player are valid only in retrospect. Nothing in the record supports the notion that the teacher had any reason, before the incident, to think that the students needed to be reminded that the game of kickball, which they had been playing for years, does not include full contact or tackling. Nor is there any reason to accept the expert's bare assertion that the incident would have been preventable by the teacher's watching play more closely.

Characterizing this particular kickball game as not played "properly" because of the number of students on the field also cannot support liability. Unlike formal league play, elementary school gym classes need not comport exactly with the games' formal rules. For one thing, a degree of adaptation is necessary to allow all members of the class to participate, rather than limiting play to a designated number of players. In any event, the teacher's duty of supervision is the same as that of a reasonably prudent parent (see Ohman v Board of Educ. of City of N.Y., 300 NY 306, 309 [1949]), and does not require strict compliance with formal rules of play. Nor is there any reason to believe that reducing the number of players in the field would have prevented the base runner from charging into the infant plaintiff at that decisive moment, however "close" supervision might have been.

To impose liability based on the gym teacher's failure to blow her whistle and stop play before the collision occurred presupposes that the teacher could have anticipated well in advance that the base runner was going to run directly into another student. The conduct that caused the injury here was simply too impulsive to permit the teacher to take action to prevent it.

Not only did the teacher have no duty to sit the children down and review the rules before beginning play, but, in addition, there is no reason to believe that it would have made any difference if she had. The undisputed testimony established

that the children had been playing kickball since at least second grade. It cannot be seriously suggested that the base runner knocked the infant plaintiff down because he incorrectly thought the rules authorized it. It was simply an act for which defendants may not be held liable. Concur—Mazzarelli, J.P., Saxe, Nardelli, DeGrasse and Manzanet-Daniels, JJ.